Good morning, and to Judge Wallace, and may it please the Court, I'd like to reserve three minutes of my time for rebuttal, please. This is a small case involving a dying industry, pay phones, but the legal and jurisprudential issues presented to this Court dwarf the $18,500 approximately awarded by the district court. You have not brought an easy case to us. We'll stipulate to that. It's a case, we submit, Your Honor, that should never have been tried in Federal Court. That's not because it's too small. Congress made a judgment in the Communications Act that claims for a violation of that statute without regard to amount of controversy can be stated in the Federal District Court. It's because of Article III. It's because of the primary jurisdiction doctrine. And it's because of the trilogy of cases from this Court and the Supreme Court involving a private right of action under Section 207 of the Act, particularly involving pay phones. We submit that the district court ignored or glossed over all of these issues. That was error and abuse of discretion or both. And we suggest, therefore, that the Court is required to reverse and remand the case or, if you agree with us, that there was no Article III subject matter jurisdiction, vacate the judgment. I'm going to address four or five issues today in a different order than presented in the briefs, because it's the duty of Federal courts first to examine whether as courts of limited jurisdiction, whether they have jurisdiction over the matter. And that issue is squarely presented in our motion to enforce settlement, which appears at Excerpt of Record 43 in the Court's decision at R.E. 54. It's undisputed that plaintiffs agreed to settle their monetary claims for a sum certain, approximately $34,000. The district court in this decision said, well, the plaintiffs didn't intend to settle the entire case. Therefore, I'm denying your motion. That was wrong. That was wrong for two reasons. First, as a matter of fact, it was the entire case. Plaintiffs only asked for monetary damages. They never pled, moved, or sought any injunctive or forward-looking relief. So as a matter of fact, that was all of the claims before the Court and the resolution of damages resolved them. Second, as a matter of law, their intent, whether they wanted to settle the case on money damages alone, is irrelevant. A plaintiff or a defendant can't confer subject matter jurisdiction under Article III on a Federal court by intending to ask for relief that they haven't pled or sought. So the fact that the plaintiffs wanted something in the future that might avoid future litigation, some testing protocol, is immaterial to whether their acceptance of our offer for some certain to settle the money claims mooted the Article III case or controversy. You know, if you'd actually paid the money over so that they weren't owed anything, you may have some traction to the argument, but you didn't. And I have difficulty understanding why they have to voluntarily accede to a settlement, including all the things that accompany a settlement, if, in fact, they are owed money. And they were owed money, because the money hadn't been paid. It was promised. It was offered. But it was going to be paid only upon acceptance and the performance of other conditions. So they still have a monetary claim. They do not have a monetary claim. The issue here isn't formation of a contract. The issue is whether there is a concrete dispute between the parties. There was. They were owed money. Were they ever paid the money? They were paid the money after the trial, and they would have been paid the money down ahead. Don't tell me would have. Don't tell me would have. Were they ever paid the money prior to trial? No, they weren't. If the answer to that question is no, then they are owed money by their legal claim. But an offer standing alone, an offer to satisfy the entire judgment, including in precedent of this Court, says that an offer to satisfy the entire judgment moots the case of controversy. Here we had more than an offer. We had an accepted offer, which was more than the damages they received at trial. Now, let me suggest one point. Mr. Manishin, we had a case recently called Facebook that came in here. And what occurred was there was a settlement, and the person in your position moved the district court to accept the settlement. The other side disagreed, appointed a receiver. He worked out the settlement, and it was gone. And so the question comes up before us a little differently than this one. The part that's left out here is an actual payment to someone representing. And should that make a difference? It should not, Your Honor. It should not because the question of a dispute relates to whether the defendant is resisting satisfying the plaintiff's demand. My argument on Article III boils down to a simple syllogism. If an offer to satisfy monetary damages moots a case, removes the case of controversy, if it's greater than what's demanded, then an accepted offer must, by definition, also moot the case or controversy. You may or may not agree with me, but I think it was incumbent on this court, I mean, it was incumbent on the district court at least to address the Article III issue. And as I'll come back to it in the context of proportionality, the court, the district court recognized that we had made an Article III case or controversy argument and confined her entire analysis to whether there was an enforceable contract between the parties and not to the Article III subject matter jurisdiction consequences of the offer and its acceptance. I think that's an abuse of discretion, if not an error of law, and that's why we presented this in the abuse of discretion portion of our brief. Let me move on to primary jurisdiction. You mentioned some authority. What authority? And I confess this was one of the issues I got to later, but as I look at your brief, I'm not sure what authority you're identifying in terms of offering up money is enough  Yes. Give me one moment, sir. I know that they're cited in our reply brief. Yeah, I'm sorry. If you look at page 26 of our reply brief, the Samsung Electric Court from the Federal Circuit is an offer case, and the Rand v. Monsanto court case from the Seventh Circuit is the same. There's a district court case that I supplied in a Rule 28J letter before argument that holds the same thing. And I believe that that's not a district court case from this jurisdiction, but I found at least one. I don't have the citation handy. I can supply that after argument if the court would like. I don't believe that this court itself has ruled on the matter as far as I know. Now, let me turn, if I could, to primary jurisdiction, an arcane and convoluted and internally inconsistent document, meaning it's not about jurisdiction at all. It's about competence of Federal judges versus expert administrative agencies. The reality is that this court, that this case, was won at first impression. It's exceedingly complex, as the acronyms indicate. It was committed to an agency, and it involved industry-wide consequences. Under County of Santa Clara, that's 2009, Sintec, that's 2002, it was a perfect case for primary jurisdiction. And that's because the statute here, Section 276, is as broad and general a plenary delegation of power to an agency as you can ever see. I think the other side's going to agree with you on that. Their defense wasn't that there's something wrong with finding primary jurisdiction with the FCC. It was how tardy the request was. That is, it was pretty late in the game, and apparently that's why the district judge denied you the opportunity. I'm a fan of primary jurisdiction, especially in complicated cases. But the argument that was made by your opposition in a position of the court gives me concern. How do you get around the decision that they didn't – the judge didn't say you couldn't go to primary jurisdiction, he just says you were too late? First, the district court never addressed primary jurisdiction, so the district court did not reject it. She just ignored it. Second, the – there's also a question of waiver of waiver, which I address in our reply brief, but I won't dwell on that. The point is that as soon as the parties learn that the issue in this case involved the provision of these so-called flex annu digits, we notified the court that was after the deadline for summary judgment, and the court had disallowed all pretrial motions. So the only time left for me to raise that, Judge Wallace, was at the pretrial conference. We did, we raised it again during trial, and we raised it during closing argument. They – I take it the discovery closed in May of 2009, and the trial was not set to begin until October. Correct. When was it raised to the court that you should have? It was raised the week before the trial at the pretrial conference. As I said, summary judgment motions. When was the pretrial conference? The pretrial conference was one week before the trial, Judge. One week before the trial? One week before the trial. And recall, I did not suggest that the entire case had to be referred to the FCC. It became clear, and if you look at the transcript, very clear, that the case here involved an interpretation of specific languages from a series of FCC orders involving the provision, the transmission of Flex Annie. When that became apparent in the case, my argument to the court, which I'll continue in a moment, was you don't have the power to decide this as a matter of law because you can't make a private right of action. And if you're going to, you should ask the FCC. And I would suggest that the court should look at Judge Wallinson's decision in North County, because what he said there was the issues regarding the applicability of Section 207 are complex and should not be decided without the participation of the FCC. And it relates in part, Judge Wallace, to the global crossing issue. If a Section 207 claim requires a determination by the agency that a violation of a regulation equates to a violation of the Act, there's been no such determination. So it's a perfect opportunity for the district judge, once the issues became clear, to refer that limited issue to the FCC for preliminary resolution. It wasn't a question of delaying the entire case. It was a question of competence for deciding the dispositive question presented to the district court. Now, more importantly, let me say that I think in the facts of this case, the fact that the plaintiffs had argued that the FCC regulations literally can't mean what they say and were factually wrong, cried out for this, and that, once again, this is automatically an abuse of discretion. I won't dwell on the global crossing issue, because my time is diminishing. But I'll say this. There are three different panels of this Court. Judge Fernandez was on one of them, Green, Global Crossing, North County. Excuse me. All three of those decisions held, A, Section 276 is not self-executing and does not impose a duty on my client or any carrier to pay for each and every completed call. What it does is tell the FCC, you make regulations. Global Crossing, including the Supreme Court's affirmance of this Court, said you have to show if the regulation is validly promulgated, then a violation of the regulation can be a violation of the Act. Here we have no FCC determination that a violation of the regulation the district court relied on. The accurate call tracking regulation is a violation of the Act. So I think under that syllogism, there is no cause of action. And I'd again point to the North County case, where this Court observed that the Supreme Court's Global Crossing decision wasn't unlimited. It was a limited holding, and they quoted the court as saying that the court was not suggesting that a carrier's failure to pay violates Section 201B in every instance, 550 U.S. at 56, 594 F30 at 1159. That essentially was the theory on which the district court entered judgment against my clients, that a failure to pay violates the Act, but it doesn't. The Section 201 claim is for damages for violation of the Act. Failure to pay is not a violation of any of the specific regulations. As this Court said in Global Crossing, it's the failure to pay in accordance with the rules. And there was no allegation, nor was there proof that we violated the rules. In fact, plaintiffs have admitted, and this is page 8 of their brief, that they brought suit not for a violation of the FCC's call tracking regulation, but to recover unpaid dial-around compensation. There is no cause of action to recover unpaid dial-around compensation. There's a cause of action for damages for violation of the Act, and if a regulation equates to a violation of the Act for a violation of the regulation, there wasn't an allegation or proof or finding. Mr. Manishin, I think your point is that the complaint itself did not make the proper statement. Correct? That is, it's in the complaint that the problem lies. The complaint and the proof of trial, Judge Wallace. Yes. But in the lower court, there was no motion brought against that particular defect in the complaint as you see it. Isn't that a waiver if it isn't raised properly in a trial court? Or alternatively, how is it raised? It's a 12b6 question, Your Honor, and 12b6 issues, State of Claim, are not waived by being made in response to the complaint. I made the argument very clearly in my closing argument. I asked for post-trial briefing in light of the gravity of the issue. The Court declined my request for post-trial briefing, so it was not waived at all. I'll just make one comment on attorneys' fees. The issue of proportionality is serious. I don't believe that the Court gave serious attention to it. This Court has said that it's an automatic abuse of discretion if a district court relies on an incorrect premise in her decisions on reasonable attorneys' fees. It's very clear from the record that this district judge thought that my argument on the motion to enforce was vexatious and disingenuous. That is, by never looking at the Article III issue, her discretion on fees was based on an incorrect legal premise. So even whether you agree or not with the Seventh Circuit regime, that would require a probing and searching analysis of proportionality. When fees are more than four times the amount of damages, this district court abused her discretion in deciding proportionality below. I'll address anything else on rebuttal. Yes, sir. I'm sorry. Roberts. I'll take more of your time. I certainly understand what you're talking about here. The last point you're making, and I certainly understand the proportionality argument, but I'm not sure what it is you're pointing to with regard to the district court was, in effect, finding your argument vexatious. We cite them in our brief. There were two instances. In her denial of the motion to enforce, she said that the argument that accepting the money disposes of the entire case before the court is disingenuous. In her fee order, I can give you the citations to the record. The We can find the cites, I think. Okay. And in her fee order, she repeated that statement and she emphasized the line, saying that it was disingenuous and questionable. Then she went through, that was her first point in saying why we should bear the burden of the fees. Then she went through in great detail why that was so bad and why we had behaved so improperly in her court. Okay. Thank you. May it please the court, I'm Glenn Hotchkiss, appearing on behalf of the appellees, GCB Communications, Inc., and Lake Country Communications, Inc. I'd like to begin by making three brief but critical points. Point one, the commission's payphone compensation rules are designed to ensure  that the responsible carrier compensates the PSPs for all completed calls. That's not my opinion. That's a direct quote from the FCC's third order on reconsideration, which can be found at 16 FCCR 20,922, paragraph 12. And I would respectfully submit that the FCC's regulations and payphone orders at issue in this appeal should be interpreted and applied consistent with that primary purpose. Point two, payphone service providers like my clients have no way of knowing whether a call made from their payphones is completed or not. And they have no way of knowing whether the flex ante payphone-specific coding digits are being properly transmitted and received along the call path. And that's precisely why the FCC required that the completing carrier here U.S. South account for and track all completed calls. They did not put that responsibility on the payphone service provider. What was between the payphone service provider and South? I'm sorry, Your Honor? What was between the payphone provider and South? There was a single carrier in between the payphone – well, let me back up. The call went from the payphone to the originating local exchange carrier that provisions the payphone line. It then went to the intermediate carrier level three that U.S. South contracted with to transfer calls to it. And from level three, it went to U.S. South switch for completion. So why is it that the responsibility is with South as you interpret the case? What about the people in between your clients and South? Well, we had a lot of evidence on that at trial, Your Honor. And candidly, we acknowledged that if the LEC, who is responsible for inserting the coding digits, had it switch, that doesn't happen at the payphone. If the LEC did something wrong, that would be my client's responsibility. By the same token, if the intermediate carrier level three, with whom U.S. South was in a contractual relationship, did something wrong, that would be U.S. South's responsibility and U.S. South's expert witness, Bruce Bernard, conceded that point at trial. The FCC has never ruled on that. Not to my knowledge, no. That was the complicated part. You know, there's a glitch that happens. People who put money in your phone, South goes ahead and connects. But there's a glitch that happens and you didn't get your money. The question is whose fault it is. That is, are you going to have to bear the burden or is South going to bear the burden? And it struck me as a kind of a thing that FCC should take a look at and say, okay, it's going to work this way. What you said there is a logical way of doing it. But I wondered in my mind why the FCC hadn't made a ruling, and I suppose they just don't get asked enough. Well, I'm not sure that the FCC has ever been presented with a precise issue in this case, which is where the call has been originated from a pay phone and completed beyond dispute, thus meeting the two requirements that the FCC has set for a compensable call. But where the pay phone digits aren't received at the completing carrier switch, does that obviate the carrier's responsibility to pay compensation? Yeah. That might have been an issue that would have been worth referring to the FCC. And let me deal with that issue first. If you would, because if I had been a district court judge on this case, I think the first thing that crossed my mind was primary jurisdiction. Well, I agree. And, frankly, it probably should have crossed my opponent's mind at that same point. Unfortunately, it apparently didn't. Now, in their reply brief, in response to my waiver argument, they offer two things. They first say the Flex Annie issues became known only just before trial, after discovery closed. Well, that's demonstrably incorrect. First of all, if you look at my client's expert report prepared by Paul Brooks, which is tab A of our excerpts of record, you'll see that Mr. Brooks was talking in that expert report about the Flex Annie issues, and he was citing to the pay phone orders that addressed the Flex Annie issues. He served that report on February 12th of 2009, a full eight months before trial. You can also look at the notice of partial settlement that the parties jointly filed. It wasn't just my filing. It was U.S. South's as well. And in that joint filing, the parties were discussing the Flex Annie issues and explaining the need to resolve them in order to make what at that point was a conditional settlement a final settlement. And if you look at that notice, you'll see it was filed on March 11th of 2009, seven months before trial. So U.S. South was well aware of complex Flex Annie issues in this case many months before trial, and yet it waited until six days before trial at the final pretrial conference to spring the issue. I think the district court was well within its discretion to deny a referral at that late date. This was kind of striking to me that final pretrial order is set one week before trial. When I was a district court judge, it was much earlier than that. Was there a particular reason why the final pretrial was set just a week before? My recollection, Your Honor, is that there was a brief continuance of the pretrial conference, but it was within 14 days of the trial date as originally scheduled, and then it was pushed a little closer to trial. It was not a month out as is common. Yeah. And it would be at the final pretrial order. I suppose that something like this would ordinarily be discussed if it were a month or two earlier. But your position is that your opposition cannot wait until the final pretrial order to make this request. It has to come earlier? That's right. Certainly when the final pretrial conference is just six days before trial and two years into the case, absolutely. Given that they were on notice of this issue seven or eight months earlier, as I just indicated. The other thing is what did the district court rule on that issue? What precisely was her rule? They asked to go to primary jurisdiction. She said what? Well, what she said was, and unfortunately this is a point I was going to make today that I didn't make in the brief. There is no appellate record on this point from which you can review what the district court did. The issue was raised in the final pretrial conference. The minutes of the final pretrial conference are in the record. But there is no transcript of the final pretrial conference. My recollection is that the issue was raised and that the court summarily denied it primarily because, without my saying anything, primarily because of the lateness of the issue being raised. But again, you have no record from which to review how the primary jurisdiction issue was raised, what was argued in support of it, and why, what the district court's reasoning was in denying a referral. And it's the appellate's burden to provide you with that appellate record. They didn't do so here, and I think you can deny this argument on that basis alone. If it exists, we always rely on the thinking of the district judge when the thinking is provided to us. And I was very curious, and that's the question I wanted to bring up, why she didn't go to primary jurisdiction, what was her reasoning. But we don't have that. We don't have that. And as I said, my best recollection, and it is just a recollection since we don't have a transcript, and this was a year and a half ago. We can't cite your recollection on it. Oh, I understand. And while I'm simply indicating, my best recollection is that she was not happy that it was raised so close in time to the trial starting and felt that that was unreasonable and therefore denied the referral. One of the things that troubles me in terms of maybe why it should be sent to the FCC or why it wasn't, and I think you just described to us an understanding that the experts and the parties had in terms of who is responsible for whom. And correct me if I'm wrong, but I think you indicated that your client, the payphone service provider, was responsible for, I guess that's local equipment carrier? Local exchange carrier. Exchange carrier. Is that the case? I mean, you accepted responsibility for the local exchange carrier. You looked to U.S. South to be responsible for whoever was later down the line. That doesn't appear to be what the district court ultimately determined, and the district court's decision seems mostly based on a conclusion of law that says once your client had ordered the Flex Annie service, everything after that was the responsibility of the completing, whoever completed the call. That disparity gives me pause to say what exactly was it the district court based its conclusion on. Well, the district court based its conclusion on the fact that we provided expert testimony that our client's responsibility with respect to Flex Annie was simply to make sure that it ordered the lines as payphone lines and to ensure that the payphone lines were Flex Annie capable, meaning that once calls came from the payphone, that the Flex Annie digits would be inserted at the last switch. The district court found we did that and therefore found that we fulfilled our responsibility with respect to Flex Annie. But you don't agree with that today. Oh, I absolutely agree with that today. I thought you said a moment ago that it was certainly your obligation or you and the LEC had to see that it got sent off into the system. No, Your Honor. It is not my client's, the payphone service provider's obligation to make sure that the digits are transmitted. That's the Lex responsibility. Why not? Whose is it, the LEC? Yes. But you said a moment ago that you started your argument practically by saying, well, we agree that we had to get it sent off into the system, we and the LEC, and if we didn't, then South wasn't responsible. That's how you started. Actually, that's not quite. Are you sort of backing up that a little bit? No, Your Honor. If I can clarify, that's not exactly what I said. What I said was if the LEC – I didn't say that the payphone service provider is responsible for transmitting the digits. To the contrary, I said that happens at the LEC switch. But what I did say is if the LEC never transmitted the digits, then that could perhaps be my client's responsibility. In other words, my client might not be entitled to prevail. The second part of that argument, though, which I didn't have the opportunity to make, is that we presented evidence at trial that, in fact, the LEC had transmitted the coding digits. But the district judge did decide that it didn't matter whether it did or not. It appears so. Well, it appears so because that's what the district judge said. So it does sort of appear that way. Right. So if that's – if that were the legal rule, it wouldn't matter if the LEC transmitted or didn't. Correct. If the correct legal rule is it doesn't matter if the coding digits are transmitted, if that's the correct legal rule, then we were entitled to prevail because it was beyond dispute. These calls were made from a payphone and completed. Which is what the district court – Which is what the district court said. Yes. And there is no – But it's not the position you actually took. And it makes me wonder exactly what support is there legally for what is, in my mind, an uncertain conclusion of law made by the district court, that is, that the – that your client's responsibility ends upon ordering the FlexAnti service to begin with. Well, first of all, the FCC has never said, contrary to what my opponent would have me believe, that a – if the carrier does not receive the coding digits, it doesn't have to pay the compensation. There is absolutely no authority for that position. The FCC does say that the LECs and the PSPs are required to provide information, and it does say that – uses the word transmit. There's a requirement that the LECs transmit payphone-specific coding digits, so on and so forth. And that the PSPs – I'm reading now from paragraph 13 of the – I think this is the 1998 order. It says, and that the PSPs transmit those digits from their payphones to IXCs. Now, with my very rudimentary understanding of how this works, I'm puzzled by that, but I'm not sure the puzzlement works in your favor. It does appear to say PSPs transmit those digits. It does say that, Your Honor. And we explained that at trial. Both of the party's experts agree that notwithstanding what that language says, that in fact, the PSPs don't transmit the digits at all. They're generated at the LEC's switch. And by the way, U.S. South's only fact witness, Daniel Anderson, agreed with that as well. But I don't see how that helps you. My puzzlement doesn't necessarily say you're off the hook. Presumably, the FCC understands that PSPs don't actually transmit the digits, and yet what it says here is that's the responsibility put on the PSPs. Well, the FCC has said a lot of things on this subject. Let me tell you about two of them that might change your mind. First, in the FCC's per-phone waiver order, which is 13 FCCR 10,893, at footnote 27, the FCC said, quote, flex ante codes are generated in end office databases. That's a reference to the LEC's end office. In the coding digits waiver order, which is found at 13 FCCR 4998 at paragraph 62, the FCC said PSPs, quote, do not control the network modifications necessary to permit payphone-specific coding digits to be transmitted. What the FCC is recognizing there is that the PSPs don't control the coding digits above and beyond ordering it as a payphone line. Now, they say to me that what they say in paragraph 13 perhaps doesn't make sense, but it doesn't change what paragraph 13 says, which explicitly, as I read it, and maybe I've picked out the wrong piece, but I look at paragraph 13 and it says, PSPs and that, PSPs transmit those digits from their payphones to IXCs. Now, I don't understand how that's physically possible, but it says what it says. So why is it that we're supposed to or the district court is entitled to disregard that provision and not bother to see if the digits were transmitted to the IXC? Well, first of all, I don't think the district court did disregard whether the digits were transmitted to the IXC. In fact, we presented a lot of evidence, which is summarized. Was there a finding that they were? I don't believe there's a specific finding to that effect in the courts. And not a problem. If the regulation appears to require that transmission and there's no finding there's been a transmission, instead there's a conclusion of law saying it doesn't matter. Once the PSP orders the FlexAnti capable line, that's it. It looks to me like there's a gap. Well, I wouldn't consider that to be a gap just because the court did not make an express finding. And the other point that I would make is that these rules are to be construed in order to ensure compensation to my clients. The point of these rules is not to pick something and take it out of context and cite it as a basis to deny compensation to my clients for calls that, without dispute, were made from pay phones and were completed. There also is, the FCC has said, that when a carrier chooses to use FlexAnti as the basis for deciding which calls came from pay phones, a problem with the FlexAnti technology should not result in a lack of compensation to the PSP. That's the responsibility of the carrier that chose to use the FlexAnti technology. Do we know why there was a failure here? I mean, we know that calls that were properly accompanied by all the backup data digits, whatever they're called, those were paid for. The problem here is when there's been something gone amiss with regard to transmitting the other information. But I don't see anything in the district court's findings of fact that attributes the failure to anything. All we know is that there was a failure. And as I read what the FCC has said in paragraph 13, it seems to me that there is at least somewhat more responsibility placed on the PSPs than simply connecting to a phone line that's capable of transmitting the information. One way the Court dealt with that in its order is it noted that the call data regarding the calls at issue, in other words, the ones that were completed without the coding digits being received, that that call data was not turned over timely by U.S. South. If we had that call data, we might have a better idea why the coding digits were not received. Unfortunately, despite repeated requests for that call data, beginning in late 2008 and continuing throughout the first half of 2009, we never got that data until July of 2009 after discovery had closed. And that's the basis on which the district court disallowed the use of that data at trial. Let me ask one question. I know you're over. Why are we here? You want money back. South says, okay, I agree. Here's the money. You agree to amount of damages. Now, there's something else going on in the case. There's no injunction. There's no equitable relief. What is the main issue that you want us to decide here that's going to give you more than payment of what is agreed is owed to you? Well, it is correct, Your Honor, that our complaint only pleaded monetary damages. We did not plead for any form of injunctive relief. My opponent has taken the position that that means that we could not condition the monetary settlement on any other form of relief. But he cites no cases to that effect. And I have found none. I am aware of no reason why my client could not condition its acceptance of a very reduced settlement amount on a testing protocol to make sure that the parties don't find themselves in this exact same case two years down the line. Precisely. Which was my client's intent. Of course. Of course. But what you got from the district court is what you got. You got damages plus attorney's fees. And are we here deciding this just on attorney's fees? What else is there? It seems to me if you'd gone to the FCC, you'd have protection. If you'd ask for an injunction in your pleadings, you'd have protection. So I'm missing something of why we're in the court of appeals. Well, we're in the court of appeals most basically because my opponent appealed the case. I understand that. I certainly didn't appeal the case, nor have I asked that this Court consider any form of injunctive relief. That's not before you. And we can't. Of course. So if the issue, if the issue is attorney's fees, if that is the issue, I mean, there's an agreement how much so it's if the issue is attorney's fees, that's frequently something we send to a mediator and they work it out between parties of what is an attorney's fees. I'm just wondering if we're going up the hill without a payload. I'm missing something here and I don't know what it is. Your Honor, you are correct in surmising that attorney's fees may be the tail wagging the dog, especially on appeal. We have, of course, dealt with the Ninth Circuit's mediation program. I don't know that it's appropriate for me to tell you about the details of that. Suffice to say, it has not resulted in a settlement and we're here today. Okay. You've already gone through our program. That's all I have. Thank you very much for your time. Counsel is correct that there was no transcription of the pretrial conference. That is not where the judge denied our request for primary jurisdiction. The only decision she made in the pretrial conference was to grant the motion in limine that plaintiffs had made, which of course violated her own order that said no motions in limine would be allowed. In my closing argument, I spent a substantial amount of time drawing a reprimand from the district court about why primary jurisdiction was so important. There was no response orally from the court at that time. It's not addressed in any of her decisions. Second, plaintiff's counsel, again, focuses on the purpose of the statute to require compensation for each and every call. That's irrelevant. It's not self-executing. It's not something that this court can take into account and it elevates Section 276 to an enforceable right, which it is not. My client's obligation was to pay according to the rules. If that results in each and every call or not, that's up to the FCC to determine. Not a court under Section 201. As to burden of proof, these are the questions the presiding judge asked. Yes, if the lex failed to transmit this information with each call, and, Your Honor, transmit and generate are used in four different FCC orders cited in our opening and reply briefs, not just one. If the lex did not transmit the information, then the fault lies with the PSP. Counsel admitted it. It's obvious from the way the trial is conducted. If you look at findings of fact 60 and 61, I think you'll see very clearly that the court could not determine who was at fault. Sixty. There are a number of reasons why L3, our intermediate carrier, might not have gotten a lex.    The third reason is that the court may not have ordered the findings flex anti-digits. They might not have ordered it. Quote, another possibility is that the lex digits were not transmitted by the originating lex, close quote. The long and the short of it is the court said it didn't matter. Yes. That's right or wrong, that's it. The court created a legal theory under which fault didn't matter. So I want to say two things. First. So that's all you need to say. That's what the court did. You may not affirm on the alternate basis urged by amicus and appellees that they met their burden of proof as to fault because the court made no finding because she didn't have to. And second, one of the reasons for that, Judge Wallace, was that because this case was about attorney's fees, not about damages, plaintiffs made a tactical decision to engage in no third party discovery. They never asked the lex what was going on. We never saw any lex records. In fact, they never identified the LECs as an interested party in their initial disclosures ever as contemplated. So we had no reason to believe that they were going to try and introduce third party evidence through their expert. I addressed that in the briefs why we think it's inadmissible. The clock's not working, but you have exceeded your time as of now. May I make one short point? Section 207 of the statute provides an election. You may sue in court. You may go to the FCC. That election has consequences. Had they brought a complaint to the FCC, the commission could have interpreted its rules, decided whether they were right or we were right as to the meaning of transmit and generate and provide, but they chose not to do that. Now they cannot collaterally attack the FCC's rules by saying, well, that can't be true because it's wrong, because those rules are final. If they had a problem with a factual basis, they should have gone to the FCC and they're stuck with that election. Thank you. We thank you. We thank both counsel for their arguments clarifying this complicated case. The next case on this morning's calendar is submitted on the briefs. That's United States v. Norris. And then we have a case that combines four different prosecutions in the same criminal case, one of which will be argued. The other three are submitted. The case to be argued will include one-party defense counsel by telephone, so we will take a brief recess for that to be set up, and we'll return in a few moments. Thank you. Thank you. Good morning. This is Cole Benson with the Ninth Circuit. Is Mr. Kennedy available? Yes, he is. Can you hold one moment, please? Sure. Hello. It's Kirk Kennedy. Yeah. Good morning, Mr. Kennedy. Good morning. This is Deputy Benson. The Court's taking a brief recess so that we can hook you up.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  I'm going to unmute you shortly. Sounds good. I don't want to put you on mute because I'm afraid I would lose it, so be mindful that anything you do right now may be amplified, is that okay? No problem. Thank you. Thank you very much, sir.          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. You're welcome. Back in session, we're here for oral argument on United States v. Ramirez-Alvarez. Mr. Kennedy, are you there? Yes, sir. Thank you. We hope you're feeling better. You may proceed. Thank you. First, I want to thank the court for granting me the ability to do this by telephone. I appreciate it.
judges: Wallace, Fernandez, Clifton